Good morning, your honors. Michael Behrens of IRL in Manila for Petitioner Mark Brown. And at the table is my colleague, Cal Schovakie. I've got to warn you, the acoustics in this room aren't the greatest. We've got traffic noise, so try to project a little bit. Okay. You shouldn't have to lean over, but... Mr. Behrens, before you get started, I want to thank you and IRL in Manila for taking the appointment. We really appreciate the pro bono counsel on cases, particularly when they raise interesting issues. So thank you for being on this case. Thank you. You're welcome, your honor. I would like to save five minutes for rebuttal. How many minutes do you want to save? Five minutes. Okay. I'll try and help. Your honors, Mark Brown was born July 4, 1968 in India. He immigrated to the United States along with his parents, Trevor, Marjorie, and his sister, Karen, on March 25, 1977. Now, April 13, 1983, Marjorie and Trevor went to the INS to apply for naturalization. Mark was 14 at the time. Pursuant to the statutes and regulations in effect at that time, Trevor and Marjorie submitted N-400 preliminary applications to petition for naturalization, and Marjorie with hers submitted an N-604 form asking for a certificate of citizenship from Mark once she was naturalized. Now, at this time, the protections afforded by the statutes and the INS rules included 8 CFR 334.1, no person shall be denied the right to apply for naturalization in accordance with the procedures of this subchapter. 8 CFR 334.11, INS. Let me stop here for just a moment, if I may. I take it, based on what you've just said, that the thrust of your argument is he's entitled to naturalization. Given the fact that he waived the right to appeal with regard to any of the issues before the IJ and the board, other than the independent statutory remedy, are those claims waived essentially because of the notice of appeal, or are you still insisting that we have jurisdiction to review those claims? Your Honor, I believe that you do have jurisdiction to review those claims, because that waiver... But you didn't make any arguments in your brief on challenging the waiver, so why shouldn't we find that it was knowingly voluntary? Well, Your Honor, we actually did make an argument in the opening brief that his waiver was not knowing and intelligent. What evidence do you have? I mean, the transcript is pretty clear. I mean, are you just simply asking us to read the transcript the way you do? Is that what the argument comes down to? Well, I think in the case of Pierres-Guyen, this circuit found that when an IJ does not give sufficient explanation of consequences of waiver of appeal, when there are confused statements, or rather statements by the petitioner that indicate that he is confused... The statements are, I mean, he's represented by counsel, and his lawyers tell the immigration judge, I think this is a really bad idea, and I've told him that, but he nonetheless insists that he wants to waive. Where is the due process violation? Well, Your Honors, I don't quite agree that he was represented by counsel at that time. He had dismissed his counsel. Well, but there was a lawyer standing next to him who obviously had been talking to him based on what the lawyer said. The lawyer had advised him not to do it, but was acting on instructions of his counsel. Yes, but in his mind, he had dismissed his counsel. I think that's an important distinction, Your Honor. But the issue is whether or not it was knowing and voluntary. And in the face of that transcript, how can we find anything but that the transcript means what it says? Well, because I think regardless of what the transcript reflects was said to the attorney, the question is what do we know was imparted to the petitioner. And in the case of Humbardo Figueroa... Wasn't the motivation for waiving further proceedings, he wanted to essentially submit to deportation because he didn't want to be in jail any longer? Your Honor, I think actually the reason, if you look at the transcript of all of these proceedings, the reason that he wanted to waive further appeal, or not wanted to waive further appeal, but he wanted to end those proceedings, was because he had correctly read 8 U.S.C. 1252, which says that one can petition to the court of appeal for a judgment on a naturalization claim or a nationality claim only by accepting an order of removal. And if you look at this transcript, the I.J. repeatedly, over and over, said, I can't do anything about your claim to be a U.S. citizen. But that's true. Under these circumstances, it has to be done by an Article III court, does it not? It does. So what's the error in the advice that the immigration judge gave? I'm having a really hard time understanding, in the face of what the transcript shows, what evidence you have to support a due process violation. And if you have none, then the waiver is knowing and voluntary, and the only issue that this panel has to decide is what we do with the statutory right to seek naturalization. And I think you acknowledged in your brief that one of the things we could do is transfer this matter to the United States Immigration Commission and ask it to conduct a full evidentiary hearing so we can get back to the points you were making in your opening argument as to what happened from the time his parents first contacted INS to begin the naturalization. Yes, Your Honor. I do agree, and I don't want to spend too much time on this. I don't mean to take up all your time on this issue, but I think it's a significant issue. I will make one additional point, which is that in Pierres-Guyen, the Court said very clearly if there's a driving force that is clear behind this acceptance of a waiver or agreement to waive appeal, such as the hardship on your family being detained, and I think here the driving force was that Mark Brown wanted to get somewhere where he could prove that he's a U.S. citizen. That was the driving force, and I think that is one of the reasons why this was not and should not be considered a knowing and intelligent waiver. If I may ask you about the 1983 application that was made by his mother, as I understand, and please correct me if I'm wrong, that application she asked that he be given citizenship also. She had a right to do that, to make that claim for him. Is that correct? Yes, that's correct. Now, so your argument, I guess, is that your client stands in the shoe of that 1983 applications. In other words, he didn't have to come back and make a later claim for citizenship if that 1983 application would have been processed and if both parents would have been naturalized. Is it your position that at that particular point in time, if that had been done before he turned 18, he would have automatically been granted citizenship status irrespective of whether he made a later application on his own? That is correct. That's your position. It is a derivative status. All right. And there's something in the record. Apparently, he is told or the lady is told that they can't find the 1983 application. So she makes another application. Yes, Your Honor. That's the application where she doesn't get her citizenship until after he's 18. Is that correct? Yes. And then later on in the process, and I don't know whether it's your assertion or the record shows that there's something to support it, the INA seems to indicate that they have seen or are aware of a 1983 application that supposedly was lost back then when she had to make another one. Yes. And so there is something to show that what was represented to have been lost, the INA still knew about it, and they would know what's in the record there. But is her application bindable? If we sent it back to the district court, would that 1983 application now surface or Phoenix come back out? It has surfaced, Your Honor, because Mark made a FOIA request while he was detained in Arizona. And I'm taking up a lot of your time. Now, the second application that she made, she didn't make that request in his name for him to be naturalized? It's not clear, Your Honor, to the best of my knowledge, that she did. Thank you. So I think I was talking about the protections that were in place when these 1983 applications were submitted. You know, one of them they made very clear, and this is an important one, Your Honors, that the INS shall notify the applicant when and where to appear for their preliminary investigation. Now, that is the gateway to the petition process as it was taking place in the 1980s when the district courts were doing these naturalizations. There's also an internal INS operating instruction which says that all cases must be processed in chronological order. Now, this Court has stated in Abood that all, when, what cases means are all proceedings relating to the same individual. So Marjorie's second application should have slotted right back in where her first application was. And finally, another. If they couldn't find the first one, though, and the reg says that we take them in the order in which they are filed, I don't understand why the regulation would say then that she gets, in essence, back to the head of the line. What language would you point us to in the regulation that says that? Well, I think that one of the important ‑‑ I'm sorry, Your Honor, I'll look it up here. Counsel, let me just tell you that you're now down to four minutes. Go ahead and answer if you want to look that up while we're waiting. This is four minutes including the rebuttal time? Yeah, that includes your rebuttal time. Okay. So I will say that the language makes clear that it is to be placed in chronological order. No matter when it is taken out, it is put back in. So you don't go back to the back of the line. But you essentially want a court order that orders that nunk pro tunk, right? Yes. Okay. All right. I think I understand your argument. Now, Your Honor, I'd just like to talk a little bit about the key principle here. This includes your rebuttal time, you understand, right? Okay. Okay. So if you want ‑‑ Is that what you want? I will just say that it is made clear under the Icardi Doctrine that when an individual has reasonably relied on agency regulations promulgated for his or her guidance or benefit and has suffered substantially because of their violation by the agency, that relief is due. And I'll save the rest for rebuttal. Okay. Very good. We'll hear from the government. Ms. Davila. Good morning. May it please the Court, Yamile Davila on behalf of the Respondent, the Attorney General. As a matter of law, a petitioner is not a derivative United States citizen where his mother naturalized after his 18th birthday. Accordingly, because this Court cannot grant citizenship and equity, the Court should deny the petition for review. So your position is that because by passage of time the mother naturalized after he turned 18, then the only way we can grant the petitioner the relief he asks is to invoke our equitable power and, in essence, through some kind of a non-concord or declare a legal fiction that she should have been naturalized when the father was naturalized. And had that happened, then the son would have derivative citizenship. Yes, Your Honor. A petitioner is asking for a remedy in equity, which this Court may not do, where the result would be conferral of citizenship outside of the statutory requirements. Under former Section 1432a, petitioner's mother and father were required to both have naturalized before he turned 18. At that point, petitioner would have automatically derived citizenship. However, his parents did not both naturalize while he was under the age of 18. This Court in Mustanich, as well as the Supreme Court in Pendulina, Montana, Hebe, and Miranda, have all determined that citizenship may not be conferred in equity. That is, that petitioner must meet the statutory requirements as set forth by Congress. And here he did not do so. That's your absolute position? Yes, Your Honor. Let's assume. I'm not saying this happened in this case. Let's assume that you had an INS agent that didn't like people that were born in India or something like that. And he purposely delays a hearing so that this person that would be entitled to be naturalized and have her son naturalized, purposely delays it until the child is over 18 years old. The effects haven't been developed in this case because the IJA and the board didn't have the authority to make a determination on citizenship. But let's assume that you had that type of situation. Why wouldn't that be a constitutional violation such that the Court could issue such an order? Your Honor, that would be a constitutional violation. That would be denial of citizenship based on some suspect classification. Those are simply not the facts here. The facts here are the facts. But that misses the question, which is you've come in with a position that says there is nothing other than exact compliance with the statute. And now you appear to acknowledge, well, in that case, there might be something other than exact compliance with the statute. Well, in Washoop, Your Honor, this Court determined that where there was a facial challenge to the constitutionality of a citizenship statute, the Court could. Well, there's not a challenge to the constitutionality of the statute. It's a challenge to how the service behaved. Well, why isn't this a challenge to how the service behaved? Your Honor, this is an as-applied challenge to how the service behaved. However, Petitioner doesn't have a protected liberty interest. He doesn't have a protected liberty interest in the amount of time required to adjudicate his mother's N-400. The statute did the regulation. We're off now the position. You're no longer taking the position that only exact compliance with the statute can lead to citizenship, because now you're saying, but in this case, there weren't circumstances that justify the exception. Only exact compliance with the statute can convey citizenship in accordance with the statutory scheme that Congress has developed for nationalization. Does somebody have a right to apply for citizenship? Yes, Your Honor. Well, in this case, and maybe you can help me with the records, there appear to be two separate occasions years apart where his application was turned away, and there's an indication in the records it's because he'd already been naturalized. Your Honor, misrepresentations or bad information from the INS does not allow Petitioner to become a citizenship, become a citizen outside of the statutory requirements. Well, isn't that a due process violation? If you have a right to apply for citizenship and you're not allowed to apply because the service took the position he was already a citizen, what's he supposed to do? Petitioner was determined not to be a citizen because his mother did not. Well, then go back to those pieces of the record that have been identified by Petitioner where I'm looking at the printout. And sure enough, it says case closed naturalized. The two separate times, it's AR-75 and AR-79, documents from 1996 and I think it was 2001. Your Honor, Petitioner misreads those printouts. To the left of those same statements, there's a blank space where a date should be in that field. That's on AR-778 and 779. Those fields are not filled in with the dates because he wasn't naturalized. The case was not closed out. Why was the case closed? Is there something in the form that indicates that? No, the case was not closed out, Your Honor. But it says case closed. There's no date in that field, Your Honor. Oh, I see what you mean. So the absence of a date means that's a category, but the blank's not filled in. Correct, Your Honor. That field is left open. Although Petitioner asserts that his mother's application, 1983 application, was lost, there is nothing in the record that indicates that application was lost. In fact, the purportedly lost application is in the record, and it is the only application that contains a fee filing stamp. There is a 1986 application, and that application is not fee file stamped. Please compare AR-873 and 877. Although she said that the application was processed together with her husband's application. Your Honor, although there is a handbook regulation stating that it is the policy of the INS to adjudicate in chronological order, there are times where the resources may have turned to other applications to be adjudicated. At the time that Petitioner's mother applied, there was no requirement to expedite processing simply because there were children who may age out. Well, expedited wouldn't be required if the husband's application went through on a timely basis. The attachment of a child wouldn't be a justification for delaying processing of the wife's application, would it? Petitioner's mother's application was not delayed, Your Honor. It was adjudicated within seven months of her husband's application, and she was in her, it was adjudicated within three years of filing. Petitioner's mother simply waited six months for the oath to be administered, and that's the same amount of time that her husband waited for the oath to be administered. There was no requirement in 1983 to process these applications faster because of Petitioner's, Petitioner's situation, that he might age out. In fact, Petitioner's sister also aged out, and she was able to independently naturalize. Petitioner simply was not because he became a criminal and is therefore unable now to naturalize independently. We have from Naftavitzer declarations suggesting that there was a time when he was a citizen and did not pursue an application beyond that. Why shouldn't this case be sent to a district court in order to adjudicate the facts since we apparently have mixed stories or mixed inferences coming out of the documents? This case is not appropriate for a 1252b-5 remand because there are not material genuine issues of fact appropriate for a district court to resolve. That is, there is no question that Petitioner's mother naturalized after his 18th birthday. As a matter of law, he is not a derivative citizen where his mother naturalized after his 18th birthday. There's nothing that the district court could resolve in regards to that. If Petitioner's mother wanted to file a mandamus claim in 1983, 1984, 1985, 1986, she could have done so. She did not do so. She adjudicated her application was adjudicated, and she naturalized after he turned 18. Would you make clear if I'm a little confused? Are you saying that there was not an application made in 1983? No, Your Honor. There was an application made in 1983, and it was adjudicated in 1986. You're saying that she didn't make a separate application later on? Your Honor, there is a separate application in the record. However, that one does not contain a fee stamp, and it was submitted on the same day of her interview in the only interview she had in her regards to her N-400 application. It may be that the INS requested that she submit some sort of update. What is this stuff in the record? Pardon me, my language. What is this evidence in the record that she was told that her application was lost and that she had to reapply? The only evidence supporting that assertion is her own self-serving affidavit, which states that she was told that. Her own self-serving. And her husband. Not the applicant's self-serving affidavit, but her. Petitioner's mother and father both claim that at the time of his May 1985 interview, they were told. How is that self-serving? She's serving. Self-serving is when you do it to help yourself. Excuse me, Your Honor. I used the wrong term. In order to assist her son. The statement is. And what's wrong with that? I mean, you expect witnesses to testify. What counter evidence is there from the service? That the only fee stamp application in the record is the 1983 application. So you're asking us to draw a self-serving inference from documents. We have no testimony on behalf of the service. No, Your Honor. There was no mandate misclaimance, so there wasn't a taking of testimony or anything else in 1983 from individuals who might have been able to testify to that. But to go back to Judge Clifton's question, isn't that exactly why we would send this to the district court in order to establish through admissible evidence what happened? No, Your Honor, because Petitioner cannot be made a U.S. citizen outside of the statutory scheme. And here has been. You just told us to the contrary about ten minutes ago when you were asked about suppose somebody discriminated against people born in India. There's no evidence in this record that he was discriminated against. Stop. There's never been a hearing on it. There's never been an opportunity to develop evidence because I.J. didn't have jurisdiction and the board didn't have jurisdiction. I mean, I went through that. If you had a hearing, you can't say, well, there's no evidence. It ran an opportunity. Your Honor, that runs counter to the rest of the evidence. That is that his parents both naturalized. His sister has naturalized. Where's the animus here? This rational animus that is not evidence. Again, I think I said in almost so many words I thought you were missing the point of the question. You were taking the position at the very beginning that the only way to be a citizen is absolute compliance with the statute. And Judge Benavidez put a question, hypothetical, about suppose you had somebody with the service who discriminated against people born in India. And at that point, your defense wasn't, doesn't matter. Your defense was, well, there are no facts like that here. But by talking about the facts, you're acknowledging, aren't you, that, in fact, if you found a case of that kind of discrimination, there could be a basis for the Court to conclude that citizenship should be granted separate and apart from compliance with the statutory requirements. You can't come in and say, well, this isn't that case without acknowledging there could be a case where exact compliance with the statute may not be required. Yes, Your Honor. And that's what the case, that's what the Court did in Washupe. In fact, in Pendulum, the Supreme Court considered a constitutional violation as well. I'm not saying, the government's position is not that the government, that the Court cannot resolve a unconstitutional application of the statute. Our position is that here Petitioner did not meet the statutory requirements. There are no allegations that there was an unconstitutional application of the statute to him. He just makes the assertion that the government, the INS, may have misrepresented the status of his mother's application or delayed that. Your Honor, that is not enough. And that's not the end of the allegations, because there are also allegations with regard to what happened when he went in to apply later. And there are allegations that he was told at some point that, in fact, he was a citizen. There was no need to pursue that. Your Honor, under this Court's decision in Jaw, even a misrepresentation by the INS is insufficient to establish affirmative misconduct. And he has to establish affirmative misconduct. Why not? I mean, if somebody has a right to apply for citizenship and the application is turned away because he doesn't need to apply because he's a citizen, how is that not the basis for a claim later if the government changed its position, said, oops, sorry, you're not a citizen? If, in fact, at the earlier date he could have applied and could have obtained citizenship, why doesn't he have a basis to complain about that? Because under this Court's decisions in Socop, Morgan, and Perez Mejia, he would have to show some sort of deliberate lie, a pattern of falsehood, of concealment. None of those allegations are made here. He's saying there was a misrepresentation. But how does that amount to affirmative misconduct under the jurisprudence of this Court, Your Honor? It is our position that even if this Court could consider affirmative misconduct, there is not evidence of affirmative misconduct in this case. At best, there is an inadvertent delay in adjudicating his mother's application seven months after his father's. Petitioner aged out and he is not a citizen as a matter of law. And I guess your position would be, to the extent that the government made some to him about the fact that he had already been naturalized, all of those behaviors of the government occurred after he was 18. Yes, Your Honor. He already aged out. That wouldn't have changed. That wouldn't – what happened afterwards wouldn't have made unconstitutional what wasn't unconstitutional before he was 18. That's correct, Your Honor. The statute required both of his parents to naturalize before he turned 18. And that's not what happened in this case. Petitioner's mother naturalized some two months after his 18th birthday. At that point, Petitioner could have applied for citizenship independently. It did not happen until later. And now he is ineligible to become a citizen because of his criminal record. In conclusion, the Court should deny the petitioner for review. Thank you. All right. Your Honors, I'd like to follow up. Thank you. Counsel, if you could help me a little bit, can you tell me what acts you allege that the government did that show that they just didn't – it wasn't just a statutory violation, but that – but what the government's allegations are that you said that they did that occurred prior to the time he turned 18 that constitutes not just a statutory violation, but a constitutional violation? Well, Your Honors, based on the DiOccardi principle, I would say that they were in sometime between 1983 and 1985 when INS lost the first application. That is a violation of one of the – obviously one of their regulations that say not only that everybody has the right to apply, but that they shall notify the applicant to move on to the next step. That's a statutory violation, what you're saying, or their own regs or whatever. Now, how does that constitute a constitutional violation? Well, Your Honor, under the DiOccardi doctrine and the case of Caceres, where an individual has reasonably relied on agency regulations for his guidance or benefit and been – and constitute a due process violation. What have you got besides negligence? Besides negligence? Yeah. I mean, as I understand it, there was no requirement in the regs at the time that established a time clock as there is now for the processing of the application. So assuming that the agency lost the application, is your argument that they didn't – they waited an unreasonable length of time, call him in for an interview? I think our argument is that they did not follow their regulations. And regulation doesn't tell them you've got to adjudicate this within X days, does it? But it does tell them you have to adjudicate this. And if – when they lost her application, it was only by chance they even told the Browns that the application had been lost. Otherwise, it might never have been adjudicated. Of course, somebody would notice that it wasn't. Where's the evidence of deliberate misconduct sufficient to establish a constitutional due process violation? Your Honor, I don't believe there has to be evidence of deliberate misconduct to establish a constitutional violation. Under cases such as Morton v. Ruiz and Accardi and Caceres, there needs to be a violation of an agency regulation that was promulgated for the benefit of the individual who has now relied on that regulation and suffered. For instance, in the case of Moser, it was a Swiss citizen who signed a form that essentially told him that you won't lose your chance to become a U.S. citizen if you're exempt from combat service. It turns out that the form was wrong. He did lose his chance. The Supreme Court allowed him to naturalize anyway, finding that basic principles of due process accounted for this. Your Honors, I'd just like to finish up by saying that we vehemently disagree with the government that Pangilinan and Mustanich preclude relief in this case. Mustanich made clear that Pangilinan only applied to statutory, not constitutional violations. Here, there was a due process violation. And as you pointed out, the government cannot draw a reasoned distinction between an equal protection violation and a due process violation. They're both constitutional violations. They allow relief to be granted in this case. Okay. Your time has expired. Thank you very much. Thank you very much. And thank you both again for the work on the case. The case just argued is submitted for decision. We'll get you an answer as soon as we can.
judges: Benavides, Tallman, Clifton